The first case on the calendar, Anthony T. Collymore v. Crystal Meyers K. Phillips Shana McPherson. Whenever you're ready. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. Lauren Matlock Colangelo for Appellant Anthony Collymore, and I'm joined today by Omar Khan. Over the course of six years, Mr. Collymore reached out to the eight defendants named in the original and amended complaints and asked for help with a scalp condition that caused keloid scarring and significant chronic pain that interfered with his ability to sleep. Mr. Collymore did not receive the help that he required. Instead, he was repeatedly given a treatment known to be ineffective, provided with incomplete courses of medication, and prevented from seeing a dermatologist or indeed any other doctor capable of treating or diagnosing his condition. Indeed, while Mr. Collymore was first told that he would be taken to a doctor in August of 2017, he was not able to see a dermatologist until after he filed this lawsuit in 2021. As explained in Mr. Collymore's briefs, the District Court committed legal error in dismissing his original complaint before the service of process because Mr. Collymore raised at least colorable claims against defendants Martin, Chaptolaine, Leitner, and Cook, and could have done so with respect to Nurse Brennan. You said that the treatments were known to be ineffective. Is that because they didn't work? Yes, Your Honor, so- But you know, a lot of people get treated with things and they don't work. Well, Your Honor, here we have in the allegations that Mr. Collymore expressly told Ms. McPherson that Cebex had tried and had been found to be ineffective and that she nevertheless continued to give him Cebex shampoo. So this is not an instance where a treatment was tried and then one time was found to be ineffective and then they moved on. He continued to receive the Cebex shampoo despite the fact that he expressly notified defendant McPherson that was ineffective and also his amended complaint states that his medical records reflected the fact that Cebex was ineffective. How do you distinguish that from malpractice? There are bad doctors, there are nurses that don't know what they're doing. There are lawyers who don't know what they're doing. Well, Your Honor, this court explained in Chance versus Armstrong that deliberate indifference extends to circumstances wherein an easier but less efficacious treatment is applied. Here we have a treatment that is not efficacious at all and certainly that would fall within the purview of Chance versus Armstrong. Your Honor, the district court additionally erred in dismissing Mr. Collymore's amended complaint on qualified immunity grounds because his scalp condition is a clearly established serious medical need under any of the three possible interpretations of Brock versus Wright. Your Honors, if I may, I'd like to begin with three main points. First, there is no support for the idea that Brock versus Wright's holding that moderate to severe chronic pain is a serious medical need is insufficiently specific to pass Supreme Court muster. Indeed, appellees have identified no case holding that the identification of a specific medical condition at a specific level of severity is not enough. Instead, they overwhelmingly rely on cases involving alleged violations of the Fourth Amendment. But the Supreme Court has explained in Malenix versus Luna and reiterated at least four times that specificity is especially important in the context of the Fourth Amendment because those cases involve police officers responding to dynamic and dangerous conditions that make it particularly difficult to determine how the relevant legal doctrine will apply as the facts unfold. No, but what about the situation with medical personnel responding to different conditions? I'm struggling, frankly, with the idea of what is specific enough. A scalp condition doesn't seem particularly specific. I was struck by the fact that no one seemed to be able to diagnose this problem or to identify it or give it a name. And I'm not sure where that leaves me, but it doesn't leave me in a state where someone has said cancer, and we recognize cancer is a serious medical condition. Here, we're left with he's got these symptoms, which no one seems to be able to identify. I mean, what do you think is what is, you know, what's your best argument that under those circumstances, the failure to send someone to a specialist when there is some recognition that a specialist is in order is potentially deliberate disregard? Well, Your Honor, as Brock explained when evaluating whether or not the delayed referral to a dermatologist for Mr. Brock, a condition is a serious medical need when it causes significant chronic pain that interferes with daily living and would be recognized by a reasonable caregiver or patient as important and worthy of comment or treatment. Certainly, that would extend to a case where, as here, a diagnosis was not available because of the alleged deliberate indifference, because he was never taken to anyone capable of diagnosing the condition. And certainly, the appellees do not argue that this narrower holding in Brock v. Wright is insufficiently specific. And then, of course, we could even restrict Brock to its specific medical condition, which would be keloid scarring. That's another interesting thing, right? I mean, as I understand it, and I'm certainly no doctor, I'm relying on the same kinds of sources that you folks are, which are, you know, not necessarily the most reliable. But as I understand it, keloid, it's a raised scar. Sometimes it implicates nerves and causes a great deal of pain. In Brock, there was a facial scar that extended to the mouth, which would seem to be likely to interfere with eating. Now, I suppose you're going to tell me, well, this caused, we know, well, do we know that a keloid caused pain? Keloids only show up in his original complaint as a sort of passing reference. And I don't know that any of the medical records diagnosed that. Well, Your Honor, it's important to note the procedural posture here. This case was dismissed at the motion to dismiss stage, so we don't have in the record the medical records in the record, Your Honor. But what we do know is that he alleged that he suffered from keloid scarring. We know that Brock recognized that keloid scarring can cause paresthesia, which is a burning pain. Mr. Collamore certainly alleged that he suffered from burning. We know that at the stage of the proceeding, we have to take all inferences in the light favorable to Mr. Collamore. And I'll note quickly, there's no evidence that Mr. Collamore ever intended to abandon his allegation that he suffered from keloids. I'll draw your attention to page 11 of the amended complaint, which states that Mr. Collamore's scalp was permanently damaged, and certainly at the motion to dismiss stage, fairly read, this encompasses a genus of scarring that includes keloids. Is it fair to say that what you are asking for is not so much that we declare that he who are appealing against have never had the opportunity to put in any answer at all? That's not your fault. Of course, that's the district court's decision. Is what you're asking for essentially that we say that it's too soon? This complaint at least gets by a preliminary screening in the first instance as to the Yes, Your Honor. So with respect to all the defendants named in the original complaint who were dismissed before service of process, as this court acknowledged in McFadden versus Noeth and McKeegan versus McGinnis, the relevant question is whether a colorable claim has been raised. And then, of course, they're not before this court because of the ex parte procedure chosen by Congress. But as you explained in footnote four of McFadden, the correct remedy is to remand to the district court to permit service of process and then to allow the case to unfold. And with respect to the second complaint, in one of the issues that I think is going to be hardest for Mr. Collymore, as it is for most plaintiffs in these kinds of cases, is qualified immunity. Are you, you're not suggesting that we should decide that there is no qualified immunity here, rather than that at the motion to dismiss stage, notwithstanding that we should decide qualified immunity at the earliest possible stage, here is just not possible because we don't know enough facts about what's really going on. Is that the point? Well, Your Honor, so the sole question on appeal from the district court's decision is whether Mr. Collymore sufficiently alleged a clearly established serious medical need. And we're requesting that at this stage of the proceeding, you find that it was error for the district court to dismiss based on the idea that he had not. So that would be there. I see a- Yes. So are you seeking at this point, though, sort of to follow up on what Judge Lynch was asking about, to either, I don't know if at this stage you're still seeking to amend the complaint, or it sounds as if you're saying at this point you just feel like it should not have been dismissed and it should go forward, or I'm not- Well, Your Honor, we certainly believe that Mr. Collymore's allegations are more than sufficient at this stage of the proceeding. So we believe the court can decide that he's sufficiently alleged to clearly establish serious medical need. But of course, Your Honors, if you deemed it appropriate to request additional factual allegations- But then you, with regard then just to the defendants who are in the amended complaint, then is that all you're seeking to go forward to? But I understood your papers also to be perhaps disputing the dismissal of some of the defendants from the first, the original complaint? Yes, yes, Your Honor. We believe it was legal error to dismiss the original complaint against the named defendants there. Because the standard there is whether or not a colorable claim has been raised, which is a lower standard. And we believe that a colorable claim had been raised. So with respect to the original defendants, we also believe that it was error to dismiss before the service of process. At minimum, the defendants should have been served, and then the court sort of resolved the case as it went forward. But at minimum, that it was error to dismiss that original complaint without permitting Mr. Collymore to file an amended complaint that named all of the defendants that had been named in the original complaint. Because as you'll note, in dismissing the original complaint, the district court expressly instructed Mr. Collymore that he could only file an amended complaint with respect to Doctors Doe 2 and 3. If he could raise specific claims and did not appear to permit him to file an amended complaint against any of the other defendants. So we allege that was additionally error. Can I ask two quick questions? One, almost a matter just of curiosity, and I don't mean by this to put you under any pressure. You're not required to answer it, let alone to answer it affirmatively. Is your firm, are you prepared to, or authorized to state whether your firm is prepared to continue the representation of the district court if the case is remanded? Your Honor, I'm an associate, so I would need to confirm. So you're not authorized to answer that, I understand. Your Honor, that's correct. But the second is what I hope is a quick substantive question. With respect to the commissioner of corrections, are you really suggesting that it is deliberate indifference to a serious medical condition on behalf, personally committed by the commissioner of corrections, every time a prisoner sends a letter to the commissioner saying, I'm not getting adequate medical care? Your Honor, we're not asking for a per se rule that a letter is always sufficient. We're saying that under these specific allegations where he sent a letter to the commissioner after he had been suffering with this condition for I believe five years, apprised the commissioner that this had been ongoing, that nobody had treated him, and that it had progressed and gotten worse. Under, I believe it's Grulon versus New Haven, that was sufficient to state a colorable claim because the personal involvement of an official is a question of fact, and so at minimum it should have been permitted to proceed at least to an answer so we could get the full facts. Wasn't that a warden? I mean, I'm almost prepared to say, okay, a warden. That's why I asked about the commissioner, and in particular, in the facts of this case, the wardens also saw this condition. Now, it may be that they saw what the nurses and doctors said they saw, which is not as graphic as what the plaintiff alleges, which we have to take as true at this point. But taking it as true, the wardens had personal knowledge of what this all looked like, and got a letter, and they're in charge of one facility. I'm just wondering whether, well, I guess you've given your answer about the commissioner. We'll consider it. All right, thank you, Your Honor. Good morning, Your Honors, and may it please the court. I'm Assistant Attorney General James Bell Forty, and I represent Nurses Myers and Phillips in this matter. The court should affirm the judgment of the lower court. The heart of qualified immunity is about what a reasonable person in the defendant's position would have known to be clearly unconstitutional. It has to be particularized to the facts of the case. And here, this inquiry needs to be from the perspective of a reasonable registered nurse. This is a case- It seems that the case was dismissed on the ground that a rash is not a serious medical need. Yes, Your Honor, I think that the- It can be, you would agree. That a rash can be a serious medical need, Your Honor? Yeah. Your Honor, I think whether or not it states a claim is one issue, but whether or not it's clearly a- Sorry, Your Honor? For qualified immunity. Well, for qualified immunity purposes, I think the important thing to remember here is that Judge Covello wasn't dealing with a clean slate. He was dealing with 20 plus years of decisions from both this court and the district courts within the circuit, stating that skin conditions similar to this, even painful rashes, painful infections with sores, do not constitute serious medical conditions. What about Brock? Did the district court refer to that at all? The court didn't refer to Brock, Your Honor, but I think Brock's a different case for a couple of reasons. The main one being that Brock isn't a case about delay in seeing a dermatologist. Brock's a case where someone saw a dermatologist, specific course of treatment was recommended, specifically a surgical intervention. I think it was steroidal injections. And it was refused by facility doctors, excuse me, not even facility doctors, the head of medical care for the New York- But wasn't part of Brock also this question of what constitutes a serious medical condition? I mean, I know there were multiple things going on in the case, but part of the issue is, was what he was suffering from, did that constitute a serious medical condition? Well, Your Honor, I think in all deliberate indifference cases, that's part of the inquiry, because that's the objective prong. But I think for purposes of qualified immunity, whether or not Brock clearly established it, from the perspective of registered nurses in this case, is a much different question. And I think that's kind of- Why is it much different? If what Brock is talking about is this idea of, and I guess maybe this is referring back to Chance in that, that idea of, we judge a serious medical condition based on, we consider the factors of whether or not it causes chronic pain, or interferes with significant daily activities, and those types of things. And part of what Brock was looking at is the fact that this individual had a skin condition, and that it did cause chronic pain, that it did interfere with daily activities, that those are the circumstances that we look at. And so applying that to other cases does not mean that we have to have someone who has the exact same circumstance, correct? Not the exact same circumstances, Your Honor. But again, I think the circumstances are important in Brock, because first of all, Brock wasn't a qualified immunity case. But secondly, in Brock, we had not recommendations, orders from a specialist saying this is causing pain, this is something that can't be written off and needs to be addressed. Was Brock at the summary judgment stage? It was at the summary judgment stage, Your Honor. And so there was more information available. Here, this is the motion to dismiss stage. That's true, Your Honor, but Brock was also a case where, I think it's not just because it was a summary judgment stage, it was further along in the process. Whereas here, the plaintiff eventually saw a dermatologist after he filed the lawsuit and has conceded that it resolved the issue. Brock was a situation where he saw a dermatologist and it didn't resolve the issue. The dermatologist said, hey, he needs these particular things to be done. And it bumped up against a reflexive prison policy that simply said, cases about cosmetic conditions won't get surgical intervention. That's a much different set of circumstances that would have confronted my clients in this case, were people who had seen the plaintiff on, excuse me, one never saw the plaintiff, only got letters. The other received, I believe, two visits with the plaintiff, was aware at that point that the plaintiff had met with multiple APRNs, had received C-BEC shampoo, a different cream from APRN Heap, and then ultimately received antibiotics. So these are people who are aware that the plaintiff is receiving treatment. Receiving treatment that at least is partially effective by the time we get to Nurse Phillips, because plaintiff alleges that I had an infection and it recurred, meaning it resolved and it came back. That would be like saying, I had an ear infection, I took antibiotics, it got rid of it, and then it came back. That might be a chronic condition, but that treatment is at least partially effective. Maybe not to the extent that the plaintiff would have liked it to be, and maybe not- The allegation is that there was still significant and chronic pain that had not been alleviated. That's true, Your Honor, but again, just the allegation of subjective complaints of pain, I don't think is enough. And the reason for that is this court's decision in Phillips, where we had a condition that was a, I believe it was a lymphoma, which is usually not associated with pain, but the allegations were that it was growing, that it was painful. I believe it was interfering with daily activities, and it needed to be removed surgically. And ultimately, this court granted qualified immunity to the defendants in that case, despite the subjective complaints of pain. So I think saying that Brock stands for the proposition that any time someone has a subjective complaint of pain, that automatically satisfies the objective prong. I don't think that's their argument as to what Brock stands for, that any subjective complaint of pain is sufficient to be a serious medical condition. I think the comparison that's being made is that when someone is alleging that, first of all, that a skin condition cannot automatically be dismissed as not serious, and when you have circumstances where there's an allegation of chronic pain that is interfering with significant daily activities, that that could be sufficient to support a finding of serious medical condition. Well, Your Honor, I think, again, there's daylight between the question of whether or not something states a claim and whether or not something's clearly established for purposes of qualified immunity. In this case, we have a couple of things that complicate it, which is the multiple decisions from lower courts. Schiff, El-Masari, there's a whole number of them. This court's decision in Llewell. I'll point out that the Llewell decision refers to it as a rash, but when you look at the lower court's decision, it refers to it as an infection. And so those details matter. I would also point out this court's decision in Bryan, which is far more factually close to this case, where we have a spreading skin condition, it's painful. He's receiving treatment of creams and ointments. He says that they're pacifying him, that they're just trying to essentially get him to quiet down, and that they're not effective. Now in this case, he has partially effective treatment, albeit not the treatment that he ultimately wants, and he eventually sees a dermatologist, and that resolves the issue. But from the perspective of- I don't necessarily say it was partially effective, at least as pled, and it seems very plausible to me. He says, I've got an underlying condition, it causes all these sores and pus and whatever. And then sometimes it gets infected, and the antibiotics dealt with the infections. Now I'm not sure why, if he has pus and open sores, that doesn't count as an infection. I'm not sure what the distinction exactly is, but he's saying that there was this flare up of something worse. They treated that, but it didn't get at the underlying condition. Isn't that really what he, that's what he's saying. Now maybe that's not good enough, I don't know. Your Honor, I, and, I'm sorry, Your Honor, may I proceed? Okay. Your Honor, I think the way I read the complaint and the way I think it's pled is that he's receiving the treatments, it resolves the, my reading is that he's saying it's infected the whole time, and that it recurs and it comes back. Meaning that it's resolved, and I think to Your Honor's earlier question, it seems to be that his real complaint from the very beginning of his amended complaint is, these people aren't qualified to deal with my issue. They need to get me to see a dermatologist, they didn't do that. Well, didn't they say so, or at least one of them say so at some point, that you should be referred to a dermatologist? I don't believe my clients ever said that. I believe that might have been Ms. Heap, which was before Nurse Myers. And that's one of the difficulties in this case, which is plaintiff's allegations really are against the DOC as an entity. And this is about qualified immunity, which is individual capacity claims for money damages. So really, when we're talking about that qualified immunity analysis, and that's why I'm focusing on it so much, which is it's gotta be particularized to the facts and circumstances, but also to these people and their circumstances. So I very much appreciate that. And that also raises the other question of the claims for injunctive relief here, which qualified immunity does not deal with. I recognize the fact that Mr. Collymore said in an unsworn pleading to this court that was then withdrawn, that wow, he got great treatment from a dermatologist. I appreciated his candor and naivete in the sense that he was making the point, see how easy it was? All you need to do is get me to a dermatologist who is qualified to deal with the problem, and it would have been fixed. But of course, if we are somehow bound by that withdrawn statement, that may go to the injunctive relief. And I take it the other side says, but he didn't ask just for getting to a dermatologist. He wants follow up and et cetera, and the dermatologist in this case, if you take as true what Collymore said, apparently indicated he should go back at some point. And we don't know whether that's happened, but what do you say about the injunction? So, your honor, on the injunction, a couple points. The first point I would make, and it's a small quibble, it wasn't an unsworn pleading. It was actually sworn on the pains and penalties of perjury, his initial brief. The bigger issue is, the claims that were before- It didn't have to be. It didn't have to be, but it was, so. There are so many traps for the unwary prosaic litigant, I take your point. No, I understand. But to more on point, there were only individual capacity claims in the amended complaint. There are only individual capacity claims before this court right now. In fact, I've only ever appeared for Ms. Myers and Ms. Phillips as, you know, for their individual capacity. And that's not just from my perspective. That was also the perspective of the plaintiff in this case before he had counsel appointed, and apparently the counsel in this case, because that's the caption in this case. All parties are being sued in their individual capacities. So, we have that issue, which is what injunctive claims would be left against my clients, which there are none. With regard to the- Where are your clients? It's a little hard to keep track of everyone. So, my clients are Myers and Phillips. Yeah, but what institution are they at? So, Myers was at McDougal. I believe she's moved on to UConn now. It doesn't work for the prison system anymore. Phillips was at Corrigan. I do not believe she's still at Corrigan, but I can't represent that defendant later on. Is anybody representing McPherson? Yes, Your Honor, that's Mr. Plummer. But, and again, I'm way over my time, but I'll just wrap up on that point, Your Honor. With regard to the injunctive claims and the other claims of those parties I don't represent, we made the point in our brief, but I think it's important to recognize that the idea of the trap for the unwary, this is a little different than those cases that the plaintiff cites to. Those were not situations of traps for the unwary in terms of intent. Those were situations of hindsight. So, it would be like saying, you know, I didn't intend to bet a million dollars that Purdue was going to win the NCAA tournament, you know. So, all right. Thank you, Your Honor. I appreciate the indulgence. Thank you. Good morning, Your Honors. May it please the Court, my name is Tom Plummeridge, and I represent the defendant, Appalachian McPherson. At the outset, we join entirely in the position of the Office of the Attorney General. I have only two things that I wish to emphasize. First, I want to talk a little bit about Brock as it's come up in the discussion. And second, I want to talk about Ms. McPherson specifically and why qualified immunity is particularly appropriate as to her. On Brock, Your Honors, there's been some discussion about what makes Brock different from this case. But I do want to emphasize some of the things about Brock that are particularly important. As Your Honor noted during the prior argument, Brock was a grant of summary judgment. And it involved two uncontested affidavits submitted by Mr. Brock. Number one, from Mr. Brock himself. And then number two, an affidavit from his treating physician. And those affidavits contained certain uncontested allegations that were accepted for purposes of summary judgment. Number one, that he experienced daily pain that did not subside. That was aggravated by smiling, yawning, chewing, sleeping on that side of his face, and even brushing his teeth. And the pain associated with brushing his teeth was so severe that he experienced tooth decay. And as this court noted, in chance, tooth decay itself may be a serious medical need for purposes of the Estelle Standard. Mr. Collymore did not report to Ms. McPherson anything resembling the kind of constant, unbearable pain or interference with the activities of his daily life that come anywhere near what was alleged in Brock and accepted in this court. Rather, Mr. Collymore is attempting to define, and I'm referring, Your Honor, to page 37 of the plaintiff's brief. Attempting to define the right articulated in Brock as the right to be free from any chronic pain, whatever the source. It is not possible, Your Honors, to define the right at a higher level of generality. To the extent there are cases in this circuit addressing scalp conditions, even infected scalp conditions, those cases have held that the conditions are not serious for Eighth Amendment purposes as a district court. Is it permissible for a district court to assume categorically that scalp conditions are not serious medical needs? I wouldn't say that it's proper to assume categorically, Your Honor, but based on the allegations- That seems to be what the judge has done here. I think, I have two responses to that, Your Honor. Number one, the allegations in this case did not, and I'll get to this, did not involve keloid scarring at the time he was being treated. That's the first point. And the second point is the right has to be clearly established. And I believe it was appropriate for the district court to survey other cases involving skin conditions generally and to note that in none of those cases did the district court or this court recognize a clearly established right to certain medical treatment in response to a skin condition. It sounds like the answer is yes, it's appropriate to categorically rule that skin conditions, rashes, separating, sores, whatever, cannot give rise to a serious medical condition. I think it's appropriate to survey the cases in the context of what's actually alleged in the complaint, Your Honor. I guess that's my only quibble with that. As to Ms. McPherson specifically, before I move on, I also want to note that Brock involved a reversal based on the district court's apparent reliance on an extreme standard assumption as to what was required for the Eighth Amendment. So Brock is also narrower in that regard in that this court held that extreme pain is not the standard. The second point I want to emphasize, Your Honors, is that Ms. McPherson was involved only at the very start of the care at issue in this case. That is between May 2019 and August 2019, a three month window of time. During the period of time when he was treating with Ms. McPherson, he did not, Mr. Collymore, did not have keloids, which distinguishes the case significantly from Brock. There are not even allegations- He claims that he had open sores. He does, Your Honor, yes. Hardened into keloids. Correct, Your Honor. He makes a claim on page 20 of the initial complaint, the dismissed complaint, that the treatment of his condition had led to keloids. There's no allegation that he did not receive treatment for keloids. So I do want to note that difference from Brock. There is also no allegation in any of the complaints that Ms. McPherson deliberately failed to provide treatment for keloids. That is not an allegation that has been made at any stage. There is an allegation that she deliberately refused to provide treatment for his skin condition. I mean, the specific allegation is that she gave him a choice between treating his heart condition or treating the skin rash on his head. Thank you, Your Honor, and I would like to talk about that particular visit. That's the second visit. The first visit was on May 14th, 2019. Mr. Collymore complained of sores on his scalp at that visit, and the allegations are that Ms. McPherson reviewed his medical records, evaluated the scalp, noted that he appeared to have a rash on his head, and prescribed the C-BAC shampoo at that time. He was seen one week later, on May 21st, 2019, and at that point, that is the allegation where Ms. McPherson apparently refused to treat the scalp again, and instead treated an unrelated heart condition. He was still under treatment that was prescribed at the first encounter? Correct, one week earlier, Your Honor, yes. The next, the third and final visit, only other visit, that it is alleged Mr. Collymore saw Ms. McPherson, was on August 14th, 2019. And at this visit, Mr. Collymore claims that his scalp was infected. That's the first time that he alleges an infection being reported to Ms. McPherson. At that visit, Ms. McPherson did in fact change the prescription from C-BACs to another prescription shampoo. She also prescribed Mr. Collymore a medicated topical cream to be applied to the scalp. And so I also want to note, Your Honor, that in response to counsel's point, one shampoo is not easier than the other. So it's not as if Ms. McPherson was choosing an easier course. She did change the shampoo, and she also added a cream. Mr. Collymore does not allege any other interactions with Ms. McPherson. He was transferred to Corrigan Correctional Center in December 2019, and between August and December 2019, he was seen by other nurses and providers within DOC. Mr. Collymore was not experiencing a serious medical need that had been clearly established in the circuit between May 2019 and August 2019. He did not allege keloids during this time. He did not allege constant unbearable pain during this time. He did not allege he could not sleep during this time. He may have had an ongoing scalp condition that caused him, quote, pain and discomfort. I'm quoting the plaintiff's reply at page 15, footnote 8. But that is nothing more than an allegation of chronic pain at most. And that is not what is sufficient under chance or any other case by this court. Moreover, Ms. McPherson took immediate and appropriate measures in response to Mr. Collymore's complaints. There is no case in this circuit or any other circuit that would have put Ms. McPherson on notice that her conduct in this regard was unlawful or that it could amount to a violation of Mr. Collymore's clearly established rights. To the contrary, Ms. McPherson provided timely and appropriate care under the circumstances. And for these reasons, your honors, Ms. McPherson is entitled to qualified immunity and the judgment of the district court in her favor should be affirmed. Thank you. Thank you. Your honors, I have a few quick points I'd like to make. First, the athletes have cited no case saying that you require a case expressly addressing nurse practitioners to find violation of a clearly established right, and I'll note that Seperano, which we cite in our reply brief at 48 Federal Appendix 505, expressly applied Brock to a case about a nurse practitioner. With respect to the injunctive relief and Mr. Collymore's medical condition, Mr. Collymore's understanding that Ms. McPherson is as well, and so at least at minimum, his injunctive relief claim is not moved with respect to her and as well as the original defendants named in the complaint and who are currently working at McDougall. I'll also note Mr. Collymore- Apart from the qualified immunity issue, if the allegations did not establish that she was deliberately indifferent, and I think that's a fair interpretation of what Mr. Plumridge is arguing here, that she tried to treat it, she then tried something else when the first thing didn't work. I gather somebody screwed up the prescription. Isn't that the allegation that he didn't actually get what she prescribed when she changed the prescription? Well, your honor, yes, so he did not receive any additional shampoo. We don't know the cause, but I'll note that my colleague on the other side has asked you to infer an awful lot of things against Mr. Collymore that are not in the complaint. He says that Mr. Collymore did not have heloids when seeing Ms. McPherson. That's simply not supported by anything in the record, and I'll actually note that Mr. Collymore's original complaint at page 11 said that his condition was intolerable on April 22nd, 2019. Which is, of course, before he saw Ms. McPherson, so it's simply incorrect to infer that Mr. Collymore was not experiencing significant pain was seen by Ms. McPherson. And I'll also note that as the counsel on the other side has acknowledged, Brock versus Wright expressly held that you are not required to allege that you are suffering from extreme pain. It is sufficient to allege pain of a magnitude between annoying and extreme, and that when seen by Ms. McPherson, and I'll also note that from the beginning, from May 14th, the allegations say that Ms. McPherson was aware that Cebex was ineffective, nevertheless prescribed Cebex. Despite having been told expressly by Mr. Collymore that it was ineffective, and also despite the fact that the medical record stated that it was ineffective. Your honors, I see I've hit my time, unless you have additional questions. Thank you. Thank you. Thank you to all counsel. We'll take a piece of your advisement.